CENTER FOR DISABILITY ACCESS
Amanda Seabock, Esq., SBN 289900
Dennis Price, Esq., SBN 279082
Christopher A. Seabock, Esq., SBN 279640
100 Pine St., Ste 1250
San Francisco, CA 94111
(858) 375-7385; (888) 422-5191 fax
ChrisS@potterhandy.com

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

**Andres Gomez**,

Plaintiff,

v.

**Huneeus Wines LLC,** a Delaware Limited Liability Company, dba Flowers Vineyards & Winery,

Defendants.

Case No. 4:22-cv-02528-JST

**Plaintiff's Responsive Brief Regarding Supplemental Jurisdiction of Unruh in ADA Cases Originally Filed in Federal Court.**

Hon. Judge Jon S. Tigar

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... 3

MEMORANDUM .......... 1

I. Introduction .......... 1

A. AB 1521 and Construction Related Barriers .......... 1

B. Construction-Related Accessibility Claims .......... 2

C. Federal interpretation of the ADA controls resolution of the state claims. .......... 4

D. California law recognizes that website claims are not CRA claims .......... 6

E. Request for the Court to seek amicus briefing on the issue from the State of California .......... 7

II. Dismissing Plaintiff's Unruh Claim Will Only Serve to Duplicate Litigation and Risk Inconsistent Rulings. .......... 8

III. Under General Order 56, the Comity Interest is Diminished. .......... 10

IV. Nor Does the Increased State Filing Fee Justify Declining Jurisdiction. 12

V. Plaintiff's State Law Damages .......... 13

VI. Conclusion .......... 14

# TABLE OF AUTHORITIES

## Cases

*Arroyo v. Rosas,* 19 F.4th 1202 (9th Cir. 2021). .......... 1, 8

*Bostock v. Clayton County*, 139 S. Ct. 1599 (2020). .......... 1

*Buckhannon v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598 (2001) .......... 9

*Castillo v. Fortune Foods Incorporated*, Case No. CV 20-3968 PA (JCx) .......... 7

*City of Chicago v. Mills*, 204 U.S. 321 (1907) .......... 6

*Garcia v. Chung Enterprise, L.P.*, 3:21-cv-05088-WHO (N.D. Cal., December 14, 2021). .......... 9, 10

*In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994*, 909 F. Supp. 1083 (N.D. Ill. 1995) .......... 6

*Jankey v. Lee*, 55 Cal. 4th 1038 (2012) .......... 1

*Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984) .......... 6

*Mageno v. Hodad's Foundation*, Superior Court of California, Los Angeles Case No. 19GDV01517 .......... 7

*Mageno v. South Philly Foods, Inc.,* Superior Court of Californa, Los Angeles Case No. 19GDCV01254 .......... 7

*Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019) .......... 3

*Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000) .......... 3

*Wheeler v. City & Cty. of Denver*, 229 U.S. 342 (1913) .......... 6

## Statutes

21 CCR § 132 .......... 4

42 U.S.C. § 12205 .......... 11

Cal Civ. Code § 55.3(2) .......... 2

Cal. Civ. Code § 51(f) .......... 1, 2, 3, 11

Cal. Civ. Code § 55.3(b) .......... 12

Cal. Civ. Code § 55.52 .......... 3
Cal. Civ. Code § 55.54(a). .......... 12
Cal. Civ. Code § 55.54(b) .......... 12
Cal. Civ. Code § 55.54(d)(6) .......... 12
Cal. Civ. Code § 55.56(g)(1)(A) .......... 4
Cal. Civ. Code 52(a) .......... 11
Cal. Civ. Proc. § 425.50(a) .......... 12
Cal. Civ. Proc. § 425.50(b). .......... 12
Cal. Civ. Proc. § 425.55(a)(1) .......... 13
Cal. Civ. Proc. § 425.55(a)(2) .......... 13
Cal. Civ. Proc. § 425.55(a)(3) .......... 2
Cal. Civ. Proc. § 425.55(b) .......... 2
Cal. Gov't Code § 70616.5 .......... 14

**Other Authorities**

California Assembly Bill No. 1521, A.B. 1521 (Cal. 2015), section 11 (uncodified). .......... 14

# MEMORANDUM

## I. Introduction

This court has set an order to show cause re: retention of supplemental jurisdiction based on the *Arroyo v. Rosas*[1] decision of the Ninth Circuit. While blanket dismissal of state law claims under *Rosas* is prohibited, it is especially inappropriate in this case, which does not involve the category of claims that were carved at as "exceptional" by the Ninth Circuit.

The Americans with Disabilities Act ("ADA") was a landmark piece of legislation, heralded as a last step in the promise of equality made by the Civil Rights Acts of the 1960s.[2] That law provided plaintiffs an opportunity to seek injunctive relief as well as attorney's fees against non-complying businesses, but declined to create any public enforcement agency, instead relying on private enforcement. The law explicitly waived any preemption of state remedies, inviting states to enact additional penalties to aggrieved plaintiffs.[3] California amended the Unruh Civil Rights Act ("Unruh") to make any violation of a right under the ADA a violation of Unruh.[4]

While the present case invokes both the ADA and Unruh, it does not invoke a violation of a construction-related defect as defined under those state laws and does not implicate the concerns addressed by *Rosas*.

### A. AB 1521 and Construction Related Barriers

In 2015, California passed AB 1521, implementing a number of changes to state substantive laws and procedural rules involving a class of cases, specifically, construction-related accessibility ("CRA") claims. The literal reading of those

---

[1] *Arroyo v. Rosas,* 19 F.4th 1202 (9th Cir. 2021).

[2] Prematurely, given *Bostock v. Clayton County*, 139 S. Ct. 1599 (2020).

[3] *Jankey v. Lee*, 55 Cal. 4th 1038, 1049 (2012).

[4] Cal. Civ. Code § 51(f)

statutes, the legislative history relating to it, and other similar legislation do not contemplate policy or digital access claims within the CRA ambit.

Recognizing the unusual circumstances that led to the law, the California legislature stated, "the provisions of this section are warranted for this limited group of plaintiffs."[5] This should be read as a statement of intent that the statute is to be read narrowly and consistent with prior modifications to the law that consciously did not wholesale replace the application of Unruh to ADA plaintiffs. These plaintiffs are defined as "high-frequency litigants" filing cases pertaining to "construction-related accessibility."[6] CRA is not defined within this provision or given direction on where to find such a definition; however, the term is defined and used consistently throughout a similar law, a narrowing provision of the Unruh Civil Rights Act("Unruh") in Cal. Civ. Code § 55.3-55.56 et. seq. [7]

### B. Construction-Related Accessibility Claims

The Unruh Civil Rights Act provides for a $4,000 statutory penalty to any anyone who is a victim of "a violation of the right of any individual under the federal Americans with Disabilities Act of 1990."[8] In a series of laws passed in the past 10 years, limiting provisions have been placed on a subset of these claims, most recently in 2015 with AB 1521.

> "Construction-related accessibility claim" means any claim of a violation of any construction-related accessibility standard, as defined by paragraph (6) of subdivision (a) of Section 55.52, with respect to a place of public accommodation. "Construction-related accessibility claim" does not include a claim of interference with housing within the meaning of paragraph (2) of subdivision (b) of Section 54.1, **or any claim of interference caused by something other than the**

---

[5] Cal. Civ. Proc. § 425.55(a)(3)
[6] Cal. Civ. Proc. § 425.55(b)
[7] Cal Civ. Code § 55.3(2)
[8] Cal. Civ. Code § 51(f)

> **construction-related accessibility condition of the property**, including, but not limited to, the conduct of any person.[9] (emphasis added)

In the underlined section, CRA is defined narrowly to exclude any claims not explicitly contained within the definition.

> (6) "Construction-related accessibility standard" means a provision, standard, or regulation under state or federal law requiring compliance with **standards for making new construction and existing facilities** accessible to persons with disabilities, including, but not limited to, any provision, standard, or regulation set forth in Section 51, 54, 54.1, or 55 of this code, Section 19955.5 of the Health and Safety Code, the California Building Standards Code (Title 24 of the California Code of Regulations), the federal Americans with Disabilities Act of 1990 (Public Law 101-336; 42 U.S.C. Sec. 12101 et seq.), and the federal Americans with Disabilities Act Accessibility Guidelines (Appendix A to Part 36 of Title 28 of the Code of Federal Regulations).[10] (emphasis added)

This above definition is cited as part of the definition of a CRA in § 55.3. This section makes clear that the context is claims relating to violations of established "standards" for new construction or existing facilities. Websites are not "facilities" or themselves "places of public accommodation" under the ADA.[11] Websites do not have a published set of standards but are rather covered under the ADA by a policy mandate to make services accessible.[12]

---

[9] *Id.*

[10] Cal. Civ. Code § 55.52

[11] *Weyer v. Twentieth Century Fox Film Corp.*, 198 F.3d 1104 (9th Cir. 2000), 1114.

[12] *Robles v. Domino's Pizza, LLC*, 913 F.3d 898 (9th Cir. 2019), 904.

While "new construction" and "existing facilities"[13] are not defined by state law, context can be found in the protections afforded to defendants by these sections. Within Cal. Civ. Code § 55.56, the full context of this provision can be seen. This statute provides for reduced damages where a facility is inspected by a Certified Access Specialist.[14] ("CASp") CASps are individuals licensed by the state based on a rigid set of criteria related to experience in *architecture*.[15] There is no provision to obtain this licensing on the basis of website design or any digital experience; it is solely based on architectural experience or the functional equivalent, such as building inspection.[16] The section goes further to contemplate that damages could be reduced by obtaining building permits,[17] which are irrelevant to issues of website access.

### C. Federal interpretation of the ADA controls resolution of the state claims.

As noted above, Plaintiff's state claims are premised entirely on violation of a right guaranteed under the ADA. "Construction-related claims" typically stem from violations of defined standards promulgated by the Department of Justice in the ADA Standards for Accessible Design. These are objective standards and easily interpreted, with wide consistency, by a court of any jurisdiction. Policy claims, such as those included within website violations, do not have these objective statutory predicates. Plaintiff's state law claims are predicated entirely on resolution of federal law claims.

---

[13] It should be noted that under Ninth Circuit law, a website is explicitly not considered a "place" but is rather a service of a "place of public accommodation." *See Robles*, supra. Thus, any interpretation that places a website within this statute would be incongruent with Ninth Circuit law regarding the way into which websites are construed under the ADA.
[14] Cal. Civ. Code § 55.56(g)(1)(A)
[15] 21 CCR § 132
[16] *Id.*
[17] Cal. Civ. Code § 55.56(g)(1)(C)

The Department of Justice has indicated that they will not file *amicus* briefing on ADA issues in state court. This was an original primary impetus in unifying Counsel's venue of choice, as the firm is on the vanguard of numerous ADA issues and an implementing agency only weighing in on issues in one forum alone justifies choosing that forum, given the deference given to the agency determinations. Since this decision to file primarily in Federal Court, CDA has obtained several victories relating to substantive interpretation of the ADA including: *Karczewski v. DCH Mission Valley LLC*, 862 F.3d 1006 (9th Cir. 2017) (establishing that installing hand controls is a reasonable accommodation for disabled individuals attempting to test drive vehicles); *Fortyune v. City of Lomita*, 766 F.3d 1098 (9th Cir. 2014) (establishing a right to on-street accessible parking); *Miller v. California Speedway Corp.*, 536 F.3d 1020 (9th Cir. 2008) (establishing that accessible seating in live events must provide equivalent lines of sight). It is entirely possible and likely that resolution of a digital access claim, such as those present in this case, will require Department of Justice involvement to interpret the various regulations given the lack of a statutorily clear definition of digital barriers.

Counsel has built a practice that is focused on optimized federal court procedures, including specialized software, hiring near courthouses, and becoming increasingly familiar with the ECF/PACER system and FRCP. It is a specialized practice.

Counsel concedes that numerous courts have been apprised of the above in other types of cases and still decided against retention of jurisdiction. It's been suggested that the above is just a contrived justification meant as a fig leaf covering avoiding state procedures. This is demonstrably incorrect, as Counsel has been filing nearly exclusively in federal court since before these new procedures went into effect. While the effect may be avoiding California procedures, it is incidental in service of others benefits to our clients. As advocates for our clients, we have simply

decided that the Federal Court system better preserves their rights and we've chosen to litigate in that forum.

Despite the above, a litigant is well within his rights to choose the forum that provides him the best procedures. It is a long-established that when a party has a legitimate basis for federal jurisdiction, "his motive in preferring a Federal tribunal is immaterial."[18] In fact, "the cases are numerous in which it has been decided that the motives of litigants in seeking Federal jurisdiction are immaterial."[19] Thus, "We need not concern ourselves with why these parties prefer to be in federal court so long as there is a legitimate basis for jurisdiction."[20] As the Supreme Court has noted, there is nothing improper with "the litigation strategy of countless plaintiffs who seek a forum with favorable substantive or procedural rules or sympathetic local populations."[21]

In short, the stated rationale by the various judges who have declined supplemental jurisdiction are improper. Even if taken at face value, that ADA plaintiffs are intentionally "ducking" procedures perceived as burdensome in state court, this is allowed and a court declining otherwise proper jurisdiction on that basis is improper.

### D. California law recognizes that website claims are not CRA claims

There are a variety of statutory schemes relating to CRA claims. Most recently, the California legislature introduced AB-2917 to include websites in the cases tracked by the California Commission on Disability Access ("CCDA"). The CCDA's scope was previously limited to only CRA cases, but the legislature found

---

[18] *City of Chicago v. Mills*, 204 U.S. 321 (1907), 330
[19] *Wheeler v. City & Cty. of Denver*, 229 U.S. 342 (1913), 351
[20] *In re Aircrash Disaster Near Roselawn, Indiana on October 31, 1994*, 909 F. Supp. 1083 (N.D. Ill. 1995), 1090, *aff'd and remanded sub nom. In re Air Crash Disaster Near Roselawn, Ind. on Oct. 31, 1994*, 96 F.3d 932 (7th Cir. 1996).
[21] *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770 (1984), 778–79.

value in the agency's mission and is seeking to add digital cases such as these to the scope. This is being done by amending the scope to include more potential claims, ("or accessibility violations related to an internet website") not by redefining CRA to include websites. There is no such action to amended 425.55 to include these claims, demonstrating that the California legislature is aware that website cases are different and has decided to treat them similarly in some instances and differently in others.

**E. Request for the Court to seek amicus briefing on the issue from the State of California**

While Plaintiff is unaware of any binding authority interpreting "construction-related access" in the context that would be required for a dismissal contemplated by the order issued by this court, this has been addressed by at least two California state court decisions, each unequivocal that a website claim does not qualify.[22] Additionally, at least one Central District judge faced with this decision agreed.[23] Should this court disagree with the rationale of Judges Hofer, Kim and Anderson, this Court should invite briefing on the issue from an agent of the state of California. The state of California should have the opportunity to weigh in on any issues regarding its interest in the claims that would be re-filed in state court.

---

[22] *Mageno v. South Philly Foods, Inc.*, Superior Court of California, Los Angeles Case No. 19GDCV01254 (Order dated June 26, 2020 adopting tentative as ruling of the court find that website claims are excluded by Cal. Civ. Code § 55.3(a)(2).) (Ruling attached as Exhibit 1); *Mageno v. Hodad's Foundation*, Superior Court of California, Los Angeles Case No. 19GDV01517 (*Minute Order* dated March 16, 2020).

[23] On May 20, 2020, Judge Percy Anderson discharged an Order to Show Cause finding that a website claim under Unruh is not a construction-related accessibility claim. "Because this action involves allegations concerning the accessibility of a website, and therefore is not a construction-related accessibility claim, the Court hereby discharges the Order to Show Cause." *Castillo v. Fortune Foods Incorporated*, Case No. CV 20-3968 PA (JCx) (Dkt. No. 12).

Plaintiff requests that the court ask the Attorney General to file a brief on the questions posed by the court concerning the imputed interest stated by numerous District Judges in the Central District of California of the state of California's desire in having all Unruh/ADA litigation filed in the California Superior Courts. That brief should address the following in order for the court to implement the will of the state of California:

- Are website cases "constructed-related accessibility claims" as defined by state law?
- Does the State of California have a stated preference to "curtail" or otherwise limit legitimate Unruh Civil Rights Act filings based on a violation of the ADA?
- Was the $1,000 fee levied on plaintiffs intended to deter filings, or instead to support those claims that are filed in the state courts?
- Is the "high-frequency litigant" designation intended to count cases originally filed in Federal court in the total?
- Did the state anticipate the requirements of state procedure applying in federally filed cases?

Concerns of comity abound in the various orders issuing however it would appear that the Ninth Circuit is projecting its own interpretation of what the state of California wants without actually asking the state.

## II. Dismissing Plaintiff's Unruh Claim Will Only Serve to Duplicate Litigation and Risk Inconsistent Rulings.

In *Arroyo v. Rosas*, the Ninth Circuit acknowledged that in some circumstances it may be permissible to dismiss state claims early in a case when principles of comity are implicated.[24] The context in case was an ADA/Unruh claim in the Central District of California case, which is governed by fundamentally different procedures than

[24] *Arroyo v. Rosas,* 19 F.4th 1202 (9th Cir. 2021).

those in the Northern District. This is a critical distinction. The Ninth Circuit did not advise that every Unruh claim should be bifurcated, and in fact the court reversed the dismissal in that matter. This is to be determined on a case-by-case basis and should take into consideration the protections afforded to the defendants in the particular case.

In the Northern District of California, ADA claims are governed by General Order 56. This protocol explicitly anticipates the presence of a state law damages claim and encourages resolution of the ADA injunctive relief before moving to later portions of the case. Discovery and virtually all motion practice is stayed, preventing a plaintiff from obtaining a judgment on the merits for as much as a year. Dismissing these claims, which are afforded substantial protections in the Northern District of California, creates significant due process concerns for ADA plaintiffs. This system is anticipated to create an efficient and holistic resolution system prior to setting the matter for trial. But if Northern District courts begin systematically dismissing the state law claims while implementing a stay on the federal claims, it becomes functionally impossible for a plaintiff to ever obtain a decision on the merits due to the relative ease with which a defendant can simply claim mootness and evade the consequences of breaking a 30-year-old law.[25]

Shortly after *Rosas* was decided, Judge Orrick of this district rejected the invitation to bifurcate the claims at the motion to dismiss stage, recognizing that this is a permissive and discretionary tool, not a required one.[26] There, the court found:

> Every factor except comity squarely favors retaining jurisdiction. It is significantly more efficient, economical, and convenient to litigate the case in one forum rather than two. It is also fairer, as it permits both parties

[25] *See Buckhannon v. West Virginia Dept. of Health and Human Resources*, 532 U.S. 598, 608-09 (2001) (recognizing that damages claims preserve a plaintiff's ability to evade "mischievous" mootness tactics.)

[26] *Garcia v. Chung Enterprise, L.P.*, 3:21-cv-05088-WHO (N.D. Cal., December 14, 2021).

to settle all of their issues without denying either of them a forum. This is all the truer because the two claims here are entirely duplicative of one another.[27]

The reason for such a determination is obvious: A violation of the ADA is a violation of Unruh.[28] Declining supplemental jurisdiction over Plaintiff's state claim, which is defined by his federal claim, would require Plaintiff to litigate the two parallel claims in separate court systems, causing both sides to incur unnecessary and duplicative fees and costs. As prevailing plaintiffs have claims to attorney fees under both the ADA and Unruh,[29] it would also greatly increase Defendants' exposure as, even with parallel cases, there will be some work that must be done to account for the different forums. Further, it would leave open the unjust possibility of one court finding a violation of the ADA and the other not. Thus, declining supplemental jurisdiction would not further the factors underlying the "compelling-reasons" test.

## III. Under General Order 56, the Comity Interest is Diminished.

To analyze the comity interest in declining jurisdiction over Plaintiff's Unruh claim, we turn to the state's procedural safeguards. A review of these protections safeguards makes it clear that they are satisfied here.

The several rounds of amendments to California law over the last ten years have resulted in both substantive changes to the laws that protect persons with disabilities and changes to the procedures in how claims of discrimination are pursued. None of the substantive changes, such as the availability for reduction of damages, are impacted by a district court exercising supplemental jurisdiction. This is because when federal courts consider claims under state law, they apply federal procedural law and state substantive law. To the extent a federal defendant is entitled to reduced,

[27] *Garcia v. Chung Enterprise, L.P.* at 10:19-22.
[28] Cal. Civ. Code § 51(f).
[29] 42 U.S.C. § 12205, Cal. Civ. Code 52(a).

or zero, damages under state substantive law, they retain those protections in federal court.

Essentially no state court procedural safeguards are implicated if the Court retains supplemental jurisdiction. Under state law, the following procedures apply:

- The complaint must be verified,[30] and it must have information identifying the barriers encountered, the way in which it affected the plaintiff, the dates and purpose of the visit,[31] inform the defendant whether the plaintiff is a high-frequency litigant,[32] and the attorney signing the complaint is subject to, essentially, a Rule 11 standard that the claims alleged are warranted by existing law.[33]
- A set of written advisories must be served along with the complaint,[34]
- A defendant has the option to request a court stay and early evaluation conference in the proceedings before having to file a responsive pleading;[35]
- If a defendant applies for a stay and early evaluation conference, the plaintiff must provide an itemized list of specific conditions on the premises that form the basis of the complaint, and the amount of damages claimed and the demand for settlement.[36]

The California procedural scheme is designed to do several things: first, it gives a defendant access to information early so they can understand the case and their rights; second, it stays litigation so costs and fees are not run up and forces early

---

[30] Cal. Civ. Proc. § 425.50(b).
[31] Cal. Civ. Proc. § 425.50(a).
[32] Cal. Civ. Proc. § 425.50(a).
[33] Cal. Civ. Proc. § 425.50(b).
[34] Cal. Civ. Code § 55.3(b) & Cal. Civ. Code § 55.54(a).
[35] Cal. Civ. Code § 55.54(b)..
[36] Cal. Civ. Code § 55.54(d)(6)..

mediation or evaluation to encourage settlement; and finally, it forces plaintiffs and their counsel to demonstrate that the case has merit.

Almost every federal district in California has a version of this approach, including this one. Here in the Northern District, we have General Order 56, which automatically stays the case with the exception of service of initial disclosures, a joint site inspection, and mediation. Thus, irrespective of the forum, Defendants can stay litigation from the outset, participate in early mediation, and find out everything about the case and claims without the need to conduct discovery. Defendants have not been denied procedural or substantive protections by filing in Federal court.

## IV. Nor Does the Increased State Filing Fee Justify Declining Jurisdiction.

Beyond those procedural protections above, the difference between state and federal filings are the fees. The purpose of AB 1521, signed into law on October 10, 2015, was not to create limitations or enact restrictions on the filing of Unruh claims but to make sure that court services were available to all petitioners in an effective manner. The California Legislature declared when passing these amendments that: "Protection of the civil rights of persons with disabilities is of the utmost importance to this state, and *private enforcement is the essential means of achieving that goal*, as the law has been designed."[37] Nonetheless, the Legislature was concerned with a particular practice of some plaintiffs where they seek "quick cash settlements rather than correction of the accessibility violation"[38] as well as the administrative burdens on the court from high volume of filings.

Thus, a plaintiff that qualifies as a high-frequency litigant is not restricted from filing cases but is required to pay a "single high-frequency litigant fee to the clerk" of

---

[37] Cal. Civ. Proc. § 425.55(a)(1) (emphasis added).
[38] Cal. Civ. Proc. § 425.55(a)(2).

$1,000.[39] And the California Legislature stated the purpose of this additional fee requirement: "In order to ensure that the courts are not overburdened and are able to provide access to the judicial system for all persons seeking redress of their construction-related accessibility claims."[40]

The irony here is that the district court would be invoking this statute *to create* an additional, duplicated, unnecessary filing in California court, *i.e.,* to add to the burdens on the state court system by forcing Plaintiff to file—and a state superior court—to oversee, an additional redundant lawsuit where the essential facts and legal decisions are being determined in parallel. None of California's stated concerns over high-frequency litigants would be served by a decision to decline supplemental jurisdiction. One might theorize that California would be thrilled to know that the resources and competence of the federal judiciary are handling the high volume of ADA/Unruh cases, rather than those costs being absorbed by the California courts, given that the express purpose of the high-frequency litigant designation and additional filing fee is "to ensure that the [California] courts are not overburdened."[41]

A suggestion has been made that the $1,000 fee is intended to deter litigation. To the extent this interpretation is persuasive on the Court, it must be rejected as an unconstitutional limitation on the right to petition. However, this interpretation should not prove persuasive to the Court in any fashion, as it is illogical as applied to *legitimate claims.* Unruh plaintiffs are entitled to recovery of all fees and costs associated with their suits. This fee is simply passed onto the defendants.

## V. Plaintiff's State Law Damages

Plaintiff is seeking only minimum statutory penalties associated with violations of the Unruh civil rights act, up to $4,000 each for each occurrence or

---

[39] Cal. Gov't Code § 70616.5.

[40] California Assembly Bill No. 1521, A.B. 1521 (Cal. 2015), section 11 (uncodified).

[41] *Id.*

incident of deterrence. These claims are entirely predicated on ADA violations and cannot predominate over the claim on which it is predicated.

## VI. Conclusion

Plaintiff respectfully requests this Court retain jurisdiction over the properly filed state law claims, as none of the rationale expressed in *Rosas* justifies the extraordinary dismissal of a claim probably within this court's jurisdiction under § 1367.

Dated: May 25, 2022                    CENTER FOR DISABILITY ACCESS

By: /s/ Christopher A. Seabock
Christopher A. Seabock
Attorneys for Plaintiff